IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ONEAL SCALES,                          )
                                       )   Civil Action No. 7:13CV00597
            Plaintiff,                 )
                                       )   **MEMORANDUM OPINION**
v.                                     )
                                       )   By: Hon. Glen E. Conrad
BYRON TRAVIS MARKHAM, et al.,          )   Chief United States District Judge
                                       )
            Defendants.                )

In this action, which was removed from state court, Oneal Scales claims that he was subjected to unconstitutionally excessive force while he was confined at the Roanoke City Jail. The sole remaining defendant, Byron Travis Markham, a Roanoke City Sheriff's deputy, has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the motion will be denied.

**Factual Background**

The following facts from the summary judgment record are presented in the light most favorable to Scales. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that all evidence must be construed in the light most favorable to the party opposing summary judgment).

In the early morning hours of August 19, 2011, Roanoke City police officers arrested Scales for public intoxication, after being dispatched in response to a reported fight. The officers took Scales to the Roanoke City Jail, where he was held in Cell 7 pending a bond hearing in state court.

The bond hearing was held later that morning. After Scales returned from the hearing, Deputy Thomas Boone attempted to photograph Scales prior to releasing him on bond. Scales

was uncooperative during the process and appeared to still be intoxicated. Consequently, Boone decided to return Scales to his cell and attempt to obtain a photograph later.

Markham assisted Boone in escorting Scales back to Cell 7. They were followed by Deputy William Belanger. It is undisputed that Scales became upset upon learning that he was not going to be released at that time, and that he "threaten[ed]" and "curse[d]" at the deputies as they led him to the cell. Pl.'s Br. in Opp'n 2, Docket No. 63. Upon reaching the cell, Markham and Boone let go of Scales' arms and Scales entered the cell. While Markham was preparing to lock the cell door, Scales reached his arm through the door's bars and unsuccessfully attempted to strike Markham.

Markham and Scales present two different stories about what transpired next, and both parties maintain that the soundless video footage recorded by a nearby camera substantiates their version of events. Markham states that he proceeded to "rush[] Scales" and "push him" on the metal bench in the back of the cell "because Scales refused to step away from the door." Def.'s Br. in Supp. 2, Docket No. 58. Markham contends that he and the other deputies then "struggled to gain control of Scales," that they ordered Scales to quit resisting, and that "he did not quit until Markham used a knee strike to Scales' back just below his right shoulder blade." Id. at 2-3. Although Scales suffered a laceration above his right eye, Markham maintains that he "did not strike Scales in the head" or see "Scales hit[] his head on the wall." Id. at 3.

Scales, on the other hand, contends that he stepped back from the cell door after unsuccessfully attempting to strike Markham, and that Markham nonetheless reopened the cell door, "bull rush[ed]" him, and forcefully struck him in the upper chest, causing him to fall back against the rear wall of the cell and on to the metal bench. Pl.'s Br. in Opp'n 4, Docket No. 63.

2

Scales contends that Markham then climbed on top of him and repeatedly struck him in the head while the other two deputies restrained his left arm and legs.

The jail's medical staff was subsequently called to check on Scales, and they treated the laceration above his right eye. When the medical staff returned to check on Scales again after lunch, they found him unresponsive and called 911. Paramedics from Roanoke Fire-EMS responded to the call. They found Scales to be unresponsive and noted that he had "a laceration with associated hematoma over the [right] eye orbit with no active bleeding." Pl.'s Ex. 5 at 2, Docket No. 63-5. The paramedics transported Scales to Carilion Roanoke Memorial Hospital, where a CT scan revealed a "large right subdural hematoma" and a "superficial hematoma adjacent to the right orbit." Pl.'s Ex. 6 at 3-4, Docket No. 63-6. Scales was taken "emergently to the operating room" for the performance of a "right frontotemporoparietal craniectomy and evacuation of [the] acute subdural hematoma." Id.

**Procedural History**

On August 16, 2013, Scales filed the instant action against Markham, Boone, and Belanger in the Circuit Court for the City of Roanoke, asserting claims under federal and state law. On December 20, 2013, Boone removed the case to this court on the basis of federal question jurisdiction. All three defendants then moved to dismiss Scales' claims under state law on the basis that they were barred by the one-year statute of limitations set forth in Virginia Code § 8.01-243.2. On September 29, 2014, the court granted the defendants' motions.

Following the completion of discovery, Scales voluntarily dismissed the remaining claims under federal law against Boone and Belanger, and Markham moved for summary judgment. The court held a hearing on the summary judgment motion on November 25, 2014. The motion has been fully briefed and is ripe for review.

**Standard of Review**

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the nonmovant. Anderson, 477 U.S. at 255. To withstand a summary judgment motion, the nonmovant must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. Id. at 248.

**Discussion**

Scales claims that Markham used excessive force against him in violation of the Fourteenth Amendment to the United States Constitution.[1] In moving for summary judgment, Markham argues that his use of force did not violate Scales' constitutional rights, that Scales is unable to prove that his use of force caused the subdural hematoma, and that he is entitled to qualified immunity. The court will address each of these arguments in turn.

I.   **Use of Force**

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive force. Orem v. Rephann, 523 F.3d 442, 448 (4th Cir. 2008) (citing Bell v. Wolfish, 441 U.S. 520 (1979)). To prevail on an excessive force claim, Scales must show that Markham "'inflicted unnecessary and wanton pain and suffering.'" Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). "In determining whether [this] constitutional

---

[1] Although Scales also alleged that Markham's use of force violated his rights under the Fourth and Eighth Amendments, it is well settled that "excessive force claims by pretrial detainees are the purview of the Fourteenth Amendment." Wernert v. Green, 419 F. App'x 337, 339 (4th Cir. 2011) (citing Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008)).

4

line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Orem, 523 F.3d at 446 (internal citation and quotation marks omitted). While the extent of injury suffered by a detainee may provide some indication as to the amount of force applied by a defendant, "no particular extent of physical injury is required to establish an excessive force claim under the . . . Fourteenth Amendment." Sawyer v. Asbury, 537 F. App'x 283, 290 (4th Cir. 2013) (citing Wilkins, 559 U.S. at 39); see also Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013) ("The Wilkins Court clarified that the nature of the force, rather than the extent of the injury, is the relevant inquiry.").

After reviewing the evidence submitted by the parties, including the video footage from the incident at issue, the court concludes that a reasonable jury could find that Markham violated Scales' rights under the Fourteenth Amendment. Contrary to Markham's contentions, the video footage does not "clearly contradict[]" Scales' version of the story. Scott v. Harris, 550 U.S. 372, 378 (2007) (holding that a court should not adopt a plaintiff's version of the facts when ruling on a motion for summary judgment if a video "quite clearly contradicts [that] version"). Instead, a reasonable jury could find that the video footage corroborates Scales' claim that he backed away from the cell door after he unsuccessfully attempted to strike Markham, and, thus, that there was no need for any use of force by the deputy. See, e.g., Dunston v. Harrison, No. 5:11-CV-747-F, 2014 U.S. Dist. LEXIS 3883, at *23 (E.D.N.C. Jan. 13, 2014), aff'd, No. 14-6214, 2014 U.S. App. LEXIS 21772 (4th Cir. Nov. 18, 2014) ("To be sure, the video reveals that Dunston was acting obstreperous prior to the incident and he almost assuredly disobeyed orders to sit down.

However, he disengaged before Officer Douglas applied force and his turn away from Officer Douglas obviated the need for any application of force.").

Likewise, a reasonable jury could find that the amount of force used by Markham was excessive, and that his actions were not taken in a good faith effort to maintain or restore discipline. Scales maintains that Markham forcefully pushed him against the rear wall of the cell, climbed on top of him, and repeatedly struck him, while he was outnumbered three to one and the other two deputies secured one of his arms and legs. If the jury credits Scales' version of the events, which is not clearly contradicted by the video footage, the jury could reasonably find that Markham applied force maliciously and sadistically for the very purpose of causing Scales harm.

Additionally, the record reveals that Scales was treated for a laceration above his right eye immediately following the incident, and that he was subsequently found to have a superficial hematoma in the same region as well as a subdural hematoma. Based on the locations of the laceration and the hematomas, a reasonable jury could discredit Markham's assertion that he "did not strike Scales about the head [or] see Scales' head hit anything solid," Def.'s Br. at 6, and instead find that these injuries are consistent with the application of unnecessary force.[2] See Sawyer, 537 F. App'x at 294 ("Sawyer's failure to comply with Asbury's order to stand did not justify Asbury in striking Sawyer in the face. A detainee's refusal to comply with an officer's lawful order, without more, is not a license to 'take the gloves off.'").

---

[2] The parties dispute whether the subdural hematoma was in fact caused by the use of force, and Markham has moved for partial summary judgment on this issue. For the reasons explained below, the court concludes that Markham is not entitled to partial summary judgment, and that the issue of whether his use of force led to the subdural hematoma or some lesser injury must be decided by a jury. The court notes that even if Scales ultimately fails to prove that the subdural hematoma resulted from Markham's actions, Scales could still prevail on his excessive force claim. See Wilkins, 559 U.S. at 38 ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortunate to escape without serious injury."); see also Mann v. Failey, 578 F. App'x 267, 272 (4th Cir. 2014) ("Notably, a lack of injury is not dispositive, so long as there is sufficient evidence of maliciously-applied force.").

For all of these reasons, the court is convinced that genuine issues of material fact preclude the entry of summary judgment on Scales' claim of excessive force, and that a jury must determine whether Markham "inflicted unnecessary and wanton pain and suffering." Taylor, 155 F.3d at 483. Although a jury could resolve all factual disputes in favor of Markham and find that the use of force was reasonable under the circumstances, there is also evidence upon which a jury could discredit Markham's testimony and find that his use of force was unconstitutionally excessive. Given the factual disputes at hand, the court concludes that Markham is not entitled to summary judgment on the merits of the excessive force claim.

## II. Causation

Markham next argues that he is entitled to partial summary judgment on any claim for damages related to the subdural hematoma due to insufficient evidence of causation. For the reasons that follow, however, the court is unable to agree.

In moving for partial summary judgment, Markham relies primarily on an unsworn "record review," which was performed by Sander W. Leivy, M.D. at the request of Boone's attorney. Def.'s Ex. 2 at 1, Docket No. 58-2. Based on his review of certain evidence, Dr. Leivy indicated that the subdural hematoma was not necessarily caused by the deputies' use of force, and that this particular impairment could have been caused by other events that occurred within 72 hours of Scales being transported to the hospital. While Dr. Leivy will likely be permitted to provide expert testimony on this issue at trial, his unsworn record review is not supported by an affidavit or deposition testimony. Consequently, the court may not properly consider the report in deciding Markham's motion for partial summary judgment. See Edens v. Kennedy, 112 F. App'x 870, 877 (4th Cir. 2004) (holding that an unsworn report from an expert hired by the plaintiff "was not admissible on summary judgment, . . . as it was unsworn and was not accompanied by an affidavit

7

affirming its authenticity") (citing Scott v. Edinburg, 346 F.3d 752, 759 (7th Cir. 2003); Provident Life & Accident Ins. Co. v. Goel, 274 F.3d 984, 1000 (5th Cir. 2001)); see also Harris v. J.B. Robinson Jewelers, 627 F.3d 235, 239 n.1 (6th Cir. 2010). Moreover, even if the report were admissible on summary judgment, it would not compel the court to conclude that a reasonable jury could only find in Markham's favor on this issue.

Markham also argues that partial summary judgment is appropriate because Scales has not timely identified a medical expert who will testify that Markham's use of force was, in fact, the cause of the subdural hematoma. While the court agrees with Markham that Scales' failure to comply with the court's scheduling order will preclude him from calling a retained expert witness, and from eliciting expert opinions from his treating physicians on the issue of causation, the court is unable to conclude that the absence of expert testimony entitles Markham to partial summary judgment. Markham has not cited any case law from this circuit that would support the proposition that expert testimony is required to prove causation in an excessive force case under 42 U.S.C. § 1983, and, at this stage of the proceedings, the court is unable to conclude that the particular circumstances in this case warrant such requirement. Although it may be more difficult for Scales to prove that the subdural hematoma resulted from Markham's use of force without expert testimony, the record contains enough evidence from which a reasonable jury could find in favor of Scales on this issue. Thus, Markham is not entitled to partial summary judgment.[3]

---

[3] In reaching this decision, the court notes that the facts of this case are clearly distinguishable from those in the two cases from other jurisdictions on which Markham relies in seeking partial summary judgment. See Wingster v. Head, 318 F. App'x 809, 815-16 (11th Cir. 2009) (affirming the grant of summary judgment where the defendants produced "unequivocal and uncontradicted evidence" in the form of a "medical expert affidavit" from the prisoner's treating physician, which indicated that the prisoner's aneurism "resulted from natural causes and not assault or trauma," and the plaintiff "produced nothing to refute [the treating physician's] sworn testimony"); Boyett v. Cnty. of Washington, No. 2:04CV1173, 2006 U.S. Dist. LEXIS 86910, at *49-50 (D. Utah Nov. 28, 2006) (concluding that no reasonable jury could find that a deputy actually caused a deceased inmate's injuries, where there was no evidence to dispute the deputy's assertion that he never physically touched the inmate other than to guide him to the infirmary).

8

### III. Qualified Immunity

Markham also contends that he is entitled to qualified immunity. The defense of qualified immunity "protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001)). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." Meyers v. Baltimore Cnty., 713 F.3d 723, 731 (4th Cir. 2013). To prevail under this defense, Markham "has to show either that there was no constitutional violation or that the right violated was not clearly established." Gregg v. Ham, 678 F.3d 333, 341 n.7 (4th Cir. 2012) (citing Henry, 652 F.3d at 531).

Here, the court has already determined that the record, when viewed in the light most favorable to the plaintiff, contains sufficient evidence from which a reasonable jury could find that Markham used unconstitutionally excessive force against Scales. Consequently, the court must decide whether the constitutional right at issue was clearly established. In determining whether a right was clearly established, the key inquiry is "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

At time of Scales' detention in August of 2011, "it was clearly established that an arrestee or pretrial detainee is protected from the use of excessive force" under the Fourteenth Amendment. Orem, 523 F.3d at 448. Additionally, under existing Fourth Circuit precedent, "a reasonable officer should [have] been on notice that the use of force against a pretrial detainee who does not present any danger to detention officers because he has disengaged from [a] particular confrontation violates clearly established law." Dunston, 2014 U.S. Dist. LEXIS 3883, at *25

9

(citing Orem, 523 F.3d at 446-47; Jones v. Buchanan, 325 F.3d 520, 529 (4th Cir. 2003); United States v. Cobb, 905 F.2d 784, 785 (4th Cir. 1990)).

In the instant case, the record contains evidence that, when viewed in Scales' favor, suggests that Markham initiated the use of force against Scales after Scales had backed away from the cell door and was no longer attempting to engage in assaultive behavior, and that Markham then repeatedly struck Scales while he was being physically restrained by the other deputies. If this version of events is accepted, a reasonable deputy in Markham's position could not have believed that such conduct was lawful.

In sum, because the events that transpired in the cell are genuinely disputed, and since these factual issues control the determination of whether a reasonable deputy would have known that the use of force was unconstitutionally excessive, the court is unable to conclude that Markham is entitled to qualified immunity. Accordingly, the court must deny his motion for summary judgment.

## Conclusion

For the reasons stated, Markham's motion for summary judgment will be denied and the case will proceed to trial on Scales' claim of excessive force. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 5th day of December, 2014.

                                                       /s/    Glen E. Conrad
                                              Chief United States District Judge